631 S.E.2d 244

The **STATE**, Respondent,

v.

**Bynum RAYFIELD**, Petitioner.

No. **26155.**

Supreme Court of South Carolina.

Heard Nov. 3, 2005.

Decided May 30, 2006.

Rehearing Denied July 7, 2006.

Jack B. Swerling, of Columbia, for Petitioner.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia, and Solicitor John R. Justice, of Chester, for Respondent.

Justice BURNETT:

We granted a writ of certiorari to review the Court of Appeals' opinion in *State v. Rayfield*, 357 S.C. 497, 593 S.E.2d 486 (Ct.App.2004). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Bynum Rayfield (Petitioner) was convicted of three counts of first-degree criminal sexual conduct (CSC) with a minor, three counts of committing a lewd act upon a child, and one count of contributing to the delinquency of a minor. Petitioner was sentenced to concurrent terms of imprisonment of thirty years for CSC, fifteen years for lewd acts, and three years for contributing to delinquency.

During the initial jury selection, Petitioner exercised peremptory challenges against five members of the jury venire: five white females, one of whom was a potential alternate, and one white male. The petit jury selected was composed of nine males and three females. The alternates were one male and one female.

After the jury was selected, the State moved the court pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to find that Petitioner had exercised his peremptory challenges based on gender.[1] The State's main argument was that Petitioner had discriminatorily challenged female jurors, but the State also argued that Petitioner had discriminatorily challenged one male juror, the only male he challenged.

The trial judge found no *Batson* violation with respect to the female jurors. The trial judge did find a violation with respect to the one male, Juror # 70; therefore, the judge granted the State's motion and redrew the jury. None of the jurors initially challenged by Petitioner was selected for the second jury. No *Batson* motion was made, and the second jury served at trial.

Later, during the hearing on requests to charge, Petitioner objected to the trial judge charging the jury that under South Carolina Code Ann. § 16–3–657 (2003), "the testimony of a victim need not be corroborated in prosecutions" for CSC with a minor. Petitioner argued that the charge improperly implies that the alleged victim's testimony *is more credible than*

---

1. *Batson* actually prohibits only race-based strikes. *J.E.B. v. Alabama,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), is the case prohibiting gender-based strikes. Both types of strikes are popularly referred to as *Batson* violations.

other witnesses' testimony. The trial judge disagreed and gave the charge.

After the jury returned with guilty verdicts, Petitioner moved for a new trial based both on the trial judge's redrawing of the jury and on the charge to the jury. The judge court denied the motion on both grounds.

Petitioner appealed the convictions and the Court of Appeals affirmed. The Court of Appeals held that the trial judge had erred in granting the State's *Batson* motion, because "no gender based discrimination was associated with the striking of" the one male juror. *Rayfield,* 357 S.C. at 503, 593 S.E.2d at 490. The Court of Appeals further held, however, that the trial judge's error was harmless because none of the jurors whom Petitioner excused from the original jury served on the trial jury. *Id.* at 504, 593 S.E.2d at 490. According to the Court of Appeals, its holding was required under our opinion in *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996). *Id.*

With respect to the jury charge, the Court of Appeals held that the trial judge had committed no error. The Court of Appeals noted that the no-corroboration charge withstood appellate scrutiny in *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993). *Rayfield,* 357 S.C. at 505, 593 S.E.2d at 491. The Court of Appeals held that the charge as a whole was proper. *Id.*

## ISSUES

I. Did the Court of Appeals err in holding that the trial judge, in granting a groundless *Batson* motion by the State, committed harmless error in quashing the original jury and drawing a new one?

II. Did the Court of Appeals err in holding that the trial judge properly charged Section 16–3–657 to the jury?

## LAW AND ANALYSIS

### I. *BATSON* MOTION

Petitioner argues the Court of Appeals erred in holding that, although the trial judge erred in granting the State's groundless *Batson* motion, Petitioner failed to demonstrate he was prejudiced by the error. Allowing the State to pursue a

meritless *Batson* motion as a strategic ploy to draw a jury more to its liking is inconsistent with the State's duty to ensure that justice is done even while striving vigorously to obtain a conviction. Petitioner contends he was unfairly prejudiced due to the improper advantage gained by the State and, in any event, he should not be required to demonstrate prejudice in this instance because any remedy short of a new trial rewards the State for using an improper trial tactic.

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the striking of a venire person on the basis of race or gender." *State v. Shuler*, 344 S.C. 604, 615, 545 S.E.2d 805, 810 (2001). "The purposes of *Batson* and its progeny are to protect the defendant's right to a fair trial by a jury of the defendant's peers, protect each venireperson's right not to be excluded from jury service for discriminatory reasons, and preserve public confidence in the fairness of our system of justice by seeking to eradicate discrimination in the jury selection process." *State v. Haigler*, 334 S.C. 623, 628–29, 515 S.E.2d 88, 90 (1999). Both the State and defendants are prohibited from discriminatorily exercising a peremptory challenge of a prospective juror. *Georgia v. McCollum*, 505 U.S. 42, 58, 112 S.Ct. 2348, 2358–59, 120 L.Ed.2d 33 (1992).

We set forth the proper procedure for a *Batson* hearing in *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996) (citing *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). After a party objects to a jury strike, the proponent of the strike must offer a facially race-neutral explanation. This explanation is not required to be persuasive or even plausible. Once the proponent states a reason that is race-neutral, the burden is on the party challenging the strike to show the explanation is mere pretext, either by showing similarly situated members of another race were seated on the jury or the reason given for the strike is so fundamentally implausible as to constitute mere pretext despite a lack of disparate treatment. *Adams*, 322 S.C. at 123–24, 470 S.E.2d at 371–72; *Haigler*, 334 S.C. at 629–30, 515 S.E.2d at 90–91.

The Court of Appeals correctly held that the trial judge erred in granting the State's meritless *Batson* motion and redrawing the jury. The record contains no evidence

Petitioner struck the male juror based on gender. During the *Batson* hearing, Petitioner gave a gender-neutral explanation for the strike: the juror had a conservative appearance and was retired. *E.g. State v. Wilder,* 306 S.C. 535, 538, 413 S.E.2d 323, 325 (1991) (party may strike potential juror based on demeanor and disposition); *Haigler,* 334 S.C. at 632, 515 S.E.2d at 92 (lack of employment or place of employment may be neutral reason for strike). The record does not reveal a pattern of striking male jurors or any other evidence to support a finding that Petitioner's explanation was a pretext. Petitioner struck only one out of ten prospective male jurors. As the Court of Appeals observed, the State took a "disjointed and moving-target approach to its *Batson* motion." *Rayfield,* 357 S.C. at 503, 593 S.E.2d at 489. We agree with Petitioner that it appears the State willfully made a meritless *Batson* motion for the sole purpose of seeking a second chance to draw a jury which might look more favorably upon the State's case.

█ Nevertheless, we conclude the Court of Appeals correctly held the trial judge's error was harmless. In *Adams,* we held that when the trial judge improperly quashes a jury panel, no juror's equal protection rights are violated because no *Batson* violation has occurred. *Adams,* 322 S.C. at 125–26, 470 S.E.2d at 373. We further held that if the jury which actually serves at trial is not tainted by an erroneous *Batson* ruling in favor of the prosecution, then the defendant's right to a fair trial is not violated because a defendant does not have a right to be tried by any particular jury. Consequently, we held that the judge's erroneous *Batson* ruling was harmless error. *Id.* at 126, 470 S.E.2d at 373; *see also State v. Wright,* 304 S.C. 529, 534, 405 S.E.2d 825, 828 (1991) (concluding there was no prejudice to defendant when, despite earlier erroneous rulings by trial judge, he received what *Batson* was intended to provide).

█ We have held that a defendant need not always show actual prejudice for an erroneous *Batson* ruling to be reversible. Unlike *Adams* and the present case, however, those cases involved erroneous *Batson* rulings which actually tainted the jury which served at trial. *See State v. Ford,* 334 S.C. 59, 63–66, 512 S.E.2d 500, 503–04 (1999) (defendant was not

required to show actual prejudice stemming from judge's erroneous granting of State's *Batson* motion because, during selection of second jury, defendant was wrongfully denied the right to exercise a peremptory challenge against one or more jurors he previously had struck for racially neutral reasons); *State v. Short*, 333 S.C. 473, 476–78, 511 S.E.2d 358, 360–61 (1999) (applying same principle under similar facts); *State v. Floyd*, 353 S.C. 55, 58–59 & n. 5, 577 S.E.2d 215, 216 & n. 5 (2003) (defendant was not required to show actual prejudice stemming from judge's erroneous excusal of juror who refused to take a religious oath). Prejudice is presumed in such cases because there is no way to determine with any degree of certainty whether a defendant's right to a fair trial by an impartial jury was abridged. *Short*, 333 S.C. at 476–77, 511 S.E.2d at 360.

▆▆▆ In the present case, the second jury was not tainted by the trial judge's erroneous *Batson* ruling. No juror whom Petitioner challenged in the initial drawing was selected to serve on the trial jury. The Court of Appeals properly held this case is controlled by *Adams*, and Petitioner must show actual prejudice for the trial judge's error to be reversible. Petitioner may not have received the jury he wanted, but as we held in *Adams*, a defendant has no right to a particular jury. For these reasons, we conclude the trial judge's erroneous quashing of the original jury and the drawing of a new one constitutes harmless error.

▆▆▆ In reaching our conclusion, we emphasize it is improper for a party to assert a groundless *Batson* motion as a tactic to gain a second shot at selecting another jury panel which the party believes might look more favorably upon his case. We admonish counsel for the State that abuses such as the meritless motion in this case are looked upon with disfavor and will not be countenanced in the future. The solicitor and defense counsel are officers of a court of law, and are expected and required to have lawful and reasonable bases for motions presented to the trial judge. Moreover, a solicitor

> should bear in mind that he is an officer of the court, who represents all the people, including [the] accused, and [he] occupies a quasi-judicial position, whose sanctions and traditions he should preserve. It is his duty to see that justice is

done. He must see that no conviction takes place except in strict conformity with the law, and that [the] accused is not deprived of any constitutional rights or privileges. Howeverer strong the prosecuting attorney's belief may be of the prisoner's guilt, it is his duty to conduct the trial in such a manner as will be fair and impartial to the rights of the accused, ... and not say or do anything which might improperly affect or influence the jury or [the] accused's counsel.

*State v. King,* 222 S.C. 108, 119, 71 S.E.2d 793, 798 (1952). "This Court, on numerous occasions, has held that the duty of a solicitor is not to convict a defendant, but to see that justice is done. At the same time, the solicitor should prosecute vigorously." *State v. Durden,* 264 S.C. 86, 92, 212 S.E.2d 587, 590 (1975); *accord Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935) (federal prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done").

## II. JURY INSTRUCTION

 Petitioner argues the trial judge erred in charging South Carolina Code Ann. § 16–3–657 (2003) to the jury because the charge constitutes an impermissible comment on the facts of the case, it improperly emphasizes the testimony of one witness, and it carries a strong possibility of unfairly biasing the jury against the defendant. Petitioner contends the Court of Appeals erred in relying on *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993) to find the instruction was permissible. We disagree and conclude the Court of Appeals properly relied on *Schumpert* in holding the trial judge did not err in charging the jury that the victim's testimony need not be corroborated by other testimony or evidence.

Petitioner was charged with three counts of first-degree criminal sexual conduct with a minor, in violation of S.C.Code Ann. § 16–3–655 (2003). A related statute, § 16–3–657, provides "[t]he testimony of the victim need not be corroborated in prosecutions under §§ 16–3–652 through 16–3–658." These statutes prohibit various forms of criminal sexual conduct. In

*Schumpert,* we held it was not error to charge § 16–3–657 as long as the charge as a whole comports with the law. *Schumpert,* 312 S.C. at 509, 435 S.E.2d at 863.

The trial judge in the present case instructed the jury in accordance with the statute, stating " § 16–3–657 of our code of laws provides that the testimony of a victim need not be corroborated in prosecutions under this section." The trial judge charged the jury the State had the burden of proving Petitioner was guilty of the charged offenses beyond a reasonable doubt. The trial judge further instructed the jury:

In every case tried in this court before a jury, the jury becomes the sole and exclusive judges of the facts of the case. You, the ladies and gentlemen of this trial jury, are the sole and exclusive judges of the facts in this case. The constitution of the state of South Carolina has declared that a trial judge shall not intimate, state, comment upon, or make any statement to a trial jury about the facts in a case.

Since you are the sole and exclusive judges of the facts in this case, ladies and gentlemen, you are not to infer anything that I have said during the progress of this trial in ruling upon the admissibility of the evidence or from anything that I now say to you during the course of my charge to you that I have an opinion about the facts in this case. Ladies and gentlemen, the law does not permit me to have an opinion about the facts in this case. That is a matter solely for you, the ladies and gentlemen of the trial jury, to determine.

As jurors, then, it is your duty to determine, as I have stated to you, the effect, the value, the weight, and the truth of the evidence presented during the course of this trial. Necessarily, then, ladies and gentlemen, you must assess the credibility of the witnesses who have testified in this case. Credibility is simply a legalistic word which means believability. It becomes your duty as jurors to analyze and to evaluate the evidence and to determine that evidence which convinces you of its truth.

I charge you in determining the question of the credibility or the believability of the witnesses, you may believe one witness as against several witnesses or several witnesses as against one witness. You may believe a part of the testimo-

ny of a witness and reject the remaining part of the testimony of that same witness. You may believe the testimony of a witness in its entirety or you may reject the testimony of a witness in its entirety.

You may consider whether any witness has exhibited any interest, any bias, or any prejudice in this case. And, ladies and gentlemen, you may consider the demeanor of a witness, that is, the appearance of the witness on this witness stand during the trial of this case, and you may consider the opportunity for knowledge concerning those things about which a witness has testified.

These considerations you do not exercise arbitrarily, but if, in your good judgment, there is sound reason in the record of this case for so doing, because your objective, ladies and gentlemen, is to find the truth, whether it come from witness or witnesses for the state of South Carolina or from witness or witnesses for the defendant, and in so doing, in exercising your mental processes and in determining what you consider to be true, ladies and gentlemen, our law simply requires that you exercise your good, common sense, your good judgment, your sense of logic and reason, and your experiences in life.

It is not always necessary, of course, to charge the contents of a current statute. Section 16–3–657 prevents trial or appellate courts from finding a lack of sufficient evidence to support a conviction simply because the alleged victim's testimony is not corroborated. However, § 16–3–657 does much more. In enacting this statute, the Legislature recognized that crimes involving criminal sexual conduct fall within a unique category of offenses against the person. In many cases, the only witnesses to a rape or sexual assault are the perpetrator and the victim. An investigation may or may not reveal physical or forensic evidence identifying a particular perpetrator. The Legislature has decided it is reasonable and appropriate in criminal sexual conduct cases to make abundantly clear—not only to the judge but also to the jury—that a defendant may be convicted solely on the basis of a victim's testimony.

A trial judge is not required to charge § 16–3–657, but when the judge chooses to do so, giving the charge does not

constitute reversible error when this single instruction is not unduly emphasized and the charge as a whole comports with the law. The jury in this case was thoroughly instructed on the State's burden of proof and the jury's duty to find the facts and judge the credibility of witnesses. The trial judge in this case, as shown in the above portions of the charge, fully and properly instructed the jury on these principles.

## CONCLUSION

We conclude the Court of Appeals correctly held that the trial judge erred in granting the State's meritless *Batson* motion and redrawing the jury. While we conclude the error was harmless because the second jury was not tainted by the erroneous *Batson* ruling, we emphasize it is improper for a party to assert a groundless *Batson* motion as a tactic to gain a second shot at selecting another jury panel which the party believes might look more favorably upon his case. We further conclude the Court of Appeals properly held the trial judge did not err in charging the jury that the victim's testimony need not be corroborated by other testimony or evidence.

**AFFIRMED.**

TOAL, C.J., and WALLER, J., concur. PLEICONES, J., concurring in part, dissenting in part in a separate opinion in which Acting Justice STEPHEN S. BARTLETT, concurs.

Justice PLEICONES:

I concur in the majority opinion's holding that the circuit court's *Batson* ruling constituted harmless error under *State v. Adams,* 322 S.C. 114, 470 S.E.2d 366 (1996). I respectfully dissent from the majority opinion's holding that the circuit court committed no error in charging the jury. In my opinion, the circuit court committed reversible error, and Petitioner is entitled to a new trial.

Petitioner was charged with three counts of first-degree CSC with a minor, in violation of South Carolina Code section 16–3–655.[2] Another statute, section 16–3–657,[3] provides that

---

2. S.C.Code Ann. § 16–3–655 (2003).

3. S.C.Code Ann. § 16–3–657 (2003).

"[t]he testimony of the victim need not be corroborated in prosecutions under §§ 16–3–652 through 16–3–658." The circuit court charged the jury the above quoted language of section 16–3–657. This was reversible error.

"In general, the trial court is required to charge only the current and correct law of South Carolina. . . . A jury charge is correct if it contains the correct definition of the law when read as a whole." *Sheppard v. State,* 357 S.C. 646, 665, 594 S.E.2d 462, 472 (2004) (citations omitted). Some principles of law, however, are not to be charged to a jury. *See, e.g., State v. Grant,* 275 S.C. 404, 408, 272 S.E.2d 169, 171 (1980) (holding that although evidence of a defendant's flight is admissible as circumstantial evidence of guilt, it is improper for the trial judge to instruct the jury on the law of flight, because such an instruction "oftentimes has the potential for creating more problems than solutions," as it "places undue emphasis upon that part of circumstantial evidence").

Contrary to the majority opinion, we did not hold in *Schumpert* that this no-corroboration charge was proper. Rather, "[t]aking the charge as a whole, we [found] no reversible error." 312 S.C. at 509, 435 S.E.2d at 863.[4] We observed that the trial judge, in addition to charging the jury under section 16–3–657, had charged "the jury it could believe any single witness over several, it was the sole judge of the facts, [the trial judge] had no opinion about those facts, and the State had the burden of proving the offense charged beyond a reasonable doubt." *Id.*

I would hold that it is error for a trial court to charge the jury that an alleged victim's testimony needs no corroboration. Although section 16–3–657 contains current and correct law, it is not a proper subject of a jury charge. Section 16–3–657 prevents courts, either on a dispositive motion at the trial level or on appellate review, from finding a lack of sufficient evidence to support a conviction because the alleged victim's testimony is uncorroborated. *See* James Cranston Gray, Jr., *Criminal Law—Rape Reform in South Carolina,* 30 S.C. L.Rev. 45, 55–60 (1979) (discussing the no-corroboration rule

---

4. We cited *Lottie v. State,* 273 Ind. 529, 406 N.E.2d 632 (1980), to support this holding. *Lottie* was recently overruled in *Ludy v. State,* 784 N.E.2d 459, 462 & n. 2 (Ind.2003).

as governing judicial review of the sufficiency of the evidence); *cf. Ludy v. State,* 784 N.E.2d 459, 463 (Ind.2003) (holding that the no-corroboration rule is a legal standard for a court reviewing a conviction). Charging this rule does not assist the jury in fulfilling its function of deciding the facts and determing whether the state has proved the charged offense beyond a reasonable doubt. In fact, it "has the potential for creating more problems than solutions,"[5] for it might cause confusion when read with the general charge on witness credibility.[6]

More important, charging this rule carries a strong possibility of biasing the jury against the defendant. No witness's testimony need be corroborated. By specifically charging that the alleged victim's testimony need not be corroborated, the trial court singles out the alleged victim and "appears to express an opinion on her credibility." *State v. Schumpert,* 312 S.C. 502, 510, 435 S.E.2d 859, 864 (1993) (Finney, J., dissenting); *see also* S.C. Const. art. V, § 17 (providing that "[j]udges shall not charge juries in respect to matters of fact, but shall declare the law"). I would therefore hold that charging a jury on the contents of section 16–3–657 constitutes error.

Further, I would overrule the holding in *Schumpert* that the charge as a whole can render this no-corroboration charge harmless. Separately instructing the jury that it may believe one witness against many or many against one does not ameliorate or remove the favorable emphasis on the alleged victim's testimony.

Furthermore, this case is different from *Ludy, supra,* in which the Supreme Court of Indiana held that although the trial court had erred in giving the no-corroboration charge, the error was harmless because: "[T]he testimony of the victim was not uncorroborated.... [A]side from the victim's testimony there was substantial probative evidence establishing the elements of the charged offenses." 784 N.E.2d at 463. Here,

---

5. *Grant,* 275 S.C. at 408, 272 S.E.2d at 171.

6. According to the majority opinion, the General Assembly "has decided it is reasonable and appropriate" to instruct the jury that an alleged CSC victim's testimony need not be corroborated. I can find no indication in section 16–3–657 or elsewhere that the legislature intended this no-corroboration rule to be charged to the jury.

the only evidence of Petitioner's committing CSC was the testimony of the alleged victims. The jury had to determine whether it believed the purported victims or Petitioner.

For these reasons, I would hold that the circuit court committed reversible error in charging the jury. I would therefore reverse the decision of the Court of Appeals and remand the case to the circuit court for a new trial.

Acting Justice STEPHEN S. BARTLETT, concurs.