**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Nicholas Jacob McIver, Appellant.

Appellate Case No. 2018-000824

―――――――――――

Appeal From Horry County
Steven H. John, Circuit Court Judge

―――――――――――

Unpublished Opinion No. 2021-UP-353
Submitted September 1, 2021 – Filed October 13, 2021

―――――――――――

**AFFIRMED**

―――――――――――

William G. Yarborough, III, and Lauren Carole Hobbis, both of William G. Yarborough III, Attorney at Law, LLC, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody J. Brown, and Senior Assistant Attorney General J. Anthony Mabry, all of Columbia; and Solicitor Jimmy A. Richardson, II, of Conway, all for Respondent.

―――――――――――

**PER CURIAM:** Nicholas J. McIver appeals his convictions for murder, possession of a weapon during the commission of a violent crime, and grand larceny. On appeal, McIver argues the trial court erred in (1) denying his motion for a directed verdict on his murder charge because the State failed to present sufficient evidence he committed the murder alone or together with his codefendant, Terrell Freeman (Codefendant); (2) failing to instruct the jury that "evidence of events after the commission of the offenses . . . standing alone [are] insufficient circumstantial evidence to find [him] guilty"; (3) not allowing him to cross-examine a detective about statements the detective made to Codefendant; and (4) admitting a photo lineup identification and related testimony because the lineup procedure was unduly suggestive and the eyewitness's identification was unreliable. McIver also argues the State improperly presented "conflicting prosecutorial theories regarding the identity of the shooter and the manner in which the shooting occurred," causing his convictions to be "fundamentally unfair and in violation of due process." We affirm.

1. As to whether the trial court erred in denying McIver's motion for a directed verdict on his murder charge, we find there is evidence to support the trial court's ruling that the State presented sufficient evidence McIver committed the murder either alone or with Codefendant to survive McIver's directed verdict motion. *See State v. Zeigler*, 364 S.C. 94, 103, 610 S.E.2d 859, 863 (Ct. App. 2005) ("The appellate court may reverse the trial judge's denial of a motion for a directed verdict only if there is no evidence to support the judge's ruling."); *State v. Curtis*, 356 S.C. 622, 633, 591 S.E.2d 600, 605 (2004) ("A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged."); *id.* at 633–34, 591 S.E.2d at 605 ("If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury."). The State presented extensive circumstantial evidence McIver acted as the principal in shooting Amanda Fisher (Victim), including Victim's cousin's testimony she sat in Codefendant's lap in the backseat of Victim's car while Victim drove them to North Carolina just before the shooting, and it did not appear he was carrying a gun on his person; Victim's cousin's testimony McIver sat in the front passenger seat beside and to the right of Victim during the drive, and he continued to sit there when he, Victim, and Codefendant left after dropping cousin off; Victim's autopsy results showing her cause of death was a fatal gunshot wound to her head that entered above her right ear and exited above her left ear; the lack of glass at the crime scene and surveillance video of the Victim's car after the shooting that showed the gunshot did not break the car's windshield, which would have been likely if she had been shot from behind by Codefendant; surveillance video showing McIver placing an item from the waistband of his pants into the bed of his truck shortly after Victim's murder;

surveillance videos showing McIver driving Victim's car and using her credit cards after her death; and McIver burning Victim's car later in the day in Charlotte, NC. The State also presented considerable circumstantial evidence McIver and Codefendant acted together to kill Victim, including testimony from an eyewitness to the murder who stated he heard a gunshot and then saw two men pulling Victim out of her car; McIver and Codefendant being in possession of Victim's car shortly after her death; the ongoing phone calls between them following Victim's death and the burning of Victim's car; and McIver attempting to delete Codefendant's contact information from his phone.

We agree with McIver that evidence of events after Victim's murder, including the flight from the crime scene and McIver's burning of Victim's car, may not have been enough to survive directed verdict. *See State v. Odems,* 395 S.C. 582, 590, 720 S.E.2d 48, 52 (2011) (declining to hold "that flight alone is substantial circumstantial evidence of a defendant's guilt"). However, as detailed above, we find the State presented more than just flight and cover-up evidence. Accordingly, the trial court properly denied McIver's directed verdict motion, and we affirm as to this issue.

2. The trial court did not abuse its discretion in declining to charge the jury that evidence of flight or cover-up attempts after the crime occurred are not alone enough to convict McIver. *See State v. Santiago*, 370 S.C. 153, 159, 634 S.E.2d 23, 26 (Ct. App. 2006) ("An appellate court will not reverse the trial [court's] decision regarding jury charges absent an abuse of discretion."). Initially, to the extent McIver argues the trial court should have charged the jury as to cover-up evidence, this issue is not preserved for appellate review because McIver only requested a jury instruction as to flight evidence, not cover-up evidence. *See State v. Porter*, 389 S.C. 27, 37, 698 S.E.2d 237, 242 (Ct. App. 2010) ("The general rule of issue preservation is if an issue was not raised to and ruled upon by the trial court, it will not be considered for the first time on appeal."). Second, the experienced trial court properly declined to charge the jury on flight evidence because a flight instruction would have been an impermissible comment on the facts. *See* S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law."); *Pantovich v. State*, 427 S.C. 555, 562, 832 S.E.2d 596, 600 (2019) ("The modern trend, however, has cast doubt upon the validity of charges instructing juries on how to interpret and use evidence."); *State v. Grant*, 275 S.C. 404, 408, 272 S.E.2d 169, 171 (1980) (providing the "law of flight" should not be charged to the jury because it "places undue emphasis upon that part of circumstantial evidence"). Accordingly, we affirm as to this issue.

3. We find the trial court abused its discretion in prohibiting McIver from cross-examining Detective Lynam about statements he made during an interrogation of Codefendant because the statements would not violate *Bruton v. United States*, 391 U.S. 123 (1968), or open the door to Codefendant's prejudicial statements. *See State v. Byers*, 392 S.C. 438, 444, 710 S.E.2d 55, 57–58 (2011) ("The admission or exclusion of evidence is left to the sound discretion of the trial [court], whose decision will not be reversed on appeal absent an abuse of discretion."); *id.* at 444, 710 S.E.2d at 58 ("An abuse of discretion occurs when the trial court's ruling is based on an error of law." (quoting *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000))).

To the extent McIver argues he should have been allowed to question Detective Owen Lynam about asking Codefendant if what McIver took out of his waistband and put into the bed of the truck was a pill bottle or a gun, we find this issue unpreserved because McIver did not ask Detective Lynam about this statement during Detective Lynam's proffer. *See State v. Jackson*, 384 S.C. 29, 34, 681 S.E.2d 17, 20 (Ct. App. 2009) ("Excluded testimony must be proffered to the trial court to preserve the issue of its exclusion for appellate review."). However, McIver should have been allowed to question Detective Lynam about his other two statements that the State (1) had solved the case in twenty-four hours and (2) believed the murder was not premeditated. The statements do not violate *Bruton* because (1) the statements were Detective Lynam's, not Codefendant's, and (2) to the extent the statements could be construed as a confession from Codefendant, they were redacted to not mention or reference McIver. *See State v. McDonald*, 412 S.C. 133, 140, 771 S.E.2d 840, 843 (2015) ("The [*Richardson*] Court held that there was no Confrontation Clause violation 'by the admission of a nontestifying codefendant's confession with a proper limiting instruction' when 'the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.'" (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987))). Additionally, we find these statements would not have opened the door to Codefendant's confession, which implicated McIver and exculpated himself, because Detective Lynam could testify he made the statements to build rapport with Codefendant and Detective Lynam's credibility would not need to be further rehabilitated by introducing the confession. *See State v. Page*, 378 S.C. 476, 482–83, 663 S.E.2d 357, 360 (Ct. App. 2008) (providing the trial court erred "in finding that [defendant's] counsel's zealous representation of his client [by cross-examining the detective about her investigative techniques and the sufficiency of the evidence] required the admission of this inadmissible evidence in order to rehabilitate Detective's investigative techniques"). Accordingly, we find the trial court erred in not admitting this evidence.

Nonetheless, we find this error harmless beyond a reasonable doubt. *See State v. Bryant*, 369 S.C. 511, 518, 633 S.E.2d 152, 156 (2006) ("Error is harmless where it could not reasonably have affected the result of the trial."). The statements do not provide any evidence that McIver did not murder Victim, and they do not, as McIver argues, necessarily tend to show the State rushed to a wrong judgment in this case. Any value McIver would have gained from asking Detective Lynam about these statements would have been diminished, or altogether erased, by Detective Lynam's testimony that he made these statements to build a rapport with Codefendant. Accordingly, although the trial court erred in not admitting the statements, the error was harmless, and we affirm as to this issue.

4. We find the trial court did not abuse its discretion in admitting Shaniah Holmes' identification of McIver as the person she saw burning Victim's car and any related testimony because Holmes' identification was "so reliable that no substantial likelihood of misidentification existed." *See State v. Liverman*, 398 S.C. 130, 138, 727 S.E.2d 422, 425–26 (2012). While it may be debatable whether the photo lineup procedure in this case was unduly suggestive, the photo lineup and related testimony was nonetheless admissible because, viewing all the circumstances, Holmes' identification was reliable.[1] *See id*. at 138, 727 S.E.2d at 426 ("Due process requires courts to assess, on a case-by-case basis, whether the identification resulted from unnecessary and unduly suggestive police procedures, and if so, whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed."); *id*. (providing one must review "the factors to be considered in assessing the reliability of an otherwise unduly suggestive identification procedure" under the totality of the circumstances). In this case, although Holmes was only seven years old at the time she claimed to see McIver burn the car, Holmes had the ability to view McIver as he set the car on fire on her street, and she could see him while standing in her yard next to her mailbox. *See id*. (providing a factor to consider in determining the reliability of an otherwise unduly suggestive procedure is "the witness's opportunity to view the perpetrator at the time of the crime"). Holmes also provided an accurate, albeit a bit vague, description of McIver, describing him as a light-skinned black man with dreadlocks. *See id*. (providing a factor to consider in determining the reliability of an otherwise unduly suggestive procedure is "the accuracy of the witness's prior description of the criminal"). Holmes instantly identified McIver during the lineup and stated she was

---

[1] To the extent McIver argues Holmes was not reliable due to her age and competency, this issue is unpreserved. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court].").

100% certain of her choice. *See id.* (providing a factor to consider in determining the reliability of an otherwise unduly suggestive procedure is "the level of certainty demonstrated by the witness at the confrontation"). Finally, Holmes viewed the photo lineup and identified McIver only three days after the crime occurred. *See id.* (providing a factor to consider in determining the reliability of an otherwise unduly suggestive procedure is "the length of time between the crime and the confrontation"); *State v. Brown*, 333 S.C. 185, 190–91, 508 S.E.2d 38, 40–41 (Ct. App. 1998) (affirming the admission of an eyewitness's testimony and noting the eyewitness "viewed the photo line-ups only six days after the" crime occurred). Because Holmes' identification was reliable, we find the trial court did not err in admitting the photo lineup, identification, and related testimony, and we affirm as to this issue.

5.  As to McIver's argument the State violated his due process rights by improperly presenting conflicting theories as to who shot Victim, we find this issue unpreserved for appellate review because McIver did not raise it to the trial court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *State v. Langford*, 400 S.C. 421, 432, 735 S.E.2d 471, 477 (2012) ("Constitutional questions must be preserved like any other issue on appeal.").

**AFFIRMED.**[2]

**KONDUROS, HILL, and HEWITT, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.